UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FREIGHTCAR AMERICA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 1:13-cv-4889 |
| v. | ) | |
| | ) | Hon. Joan B. Gottschall |
| UNITED STEEL, PAPER & FORESTRY, | ) | |
| RUBBER, MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL & SERVICE WORKERS | ) | |
| INTERNATIONAL UNION, AFL-CIO, CLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b), OR IN THE
ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a), AND
MOTION TO STAY AND/OR PREVENT PLAINTIFF FROM OBTAINING DEFAULTS**

## <u>TABLE OF CONTENTS</u>

**Page**

I.     INTRODUCTION ................................................................................................ 1

II.    BACKGROUND ................................................................................................. 2

    A.    Prior Litigation and Settlement................................................................ 2

    B.    FreightCar's Attempt to Negotiate a New Agreement with the USW and Class Counsel................................................................................................ 3

    C.    FreightCar's Declaratory Judgment Action in Illinois, and the USW and Class Counsel's Reactive Filing in Pennsylvania .................................... 5

III.    ARGUMENT ..................................................................................................... 7

    A.    Declaratory Relief Is Appropriate to Clarify FreightCar's Rights and Obligations Under Its ERISA Plan ....................................................... 8

        1.    FreightCar Properly and in Good Faith Brought This Action to Seek a Prompt Adjudication of Its Right to Terminate Contributions to the Fund. .......................................................... 9

        2.    Courts Have Granted Declaratory Relief in Similar ERISA Retiree Medical Benefit Cases. ................................................................ 14

        3.    This Case Has Already Proceeded in an Administratively Efficient Manner, and Will Continue to Do So. .................................... 19

    B.    There Is No Good Reason to Transfer This Case to the Western District of Pennsylvania ......................................................................................... 22

        1.    The First-Filed Rule Requires that FreightCar's Action Trump the Lawsuit Filed Later by the USW and Class Counsel............................. 23

        2.    Transfer Would Not Promote Convenience of the Parties and Witnesses. ........................................................................................ 25

        3.    Transfer Would Not Be in the Interest of Justice. .................................. 27

        4.    If This Case Must Be Transferred, It Should Be Transferred to Judge Cercone in the Pittsburgh Division.............................................. 29

    C.    Defendants' Motion to Prohibit Default Judgments Is Moot............................. 30

IV.    CONCLUSION.................................................................................................... 30

## TABLE OF AUTHORITIES

Page

### Cases

*ACF Indus. LLC v. Chapman*,
   2004 WL 3178257 (E.D. Mo. Aug. 26, 2004) ............................................................. 19, 20, 21

*Adventus Americas Inc. v. Innovative Environmental Techs., Inc.*,
   2007 WL 704938 (N.D. Ill. Mar. 5, 2007) ................................................................. 30

*APV North America, Inc. v. Transindustrial Development Corp.*,
   2006 WL 51169 (N.D. Ill. Jan. 3, 2006) ................................................................. 29

*Bidlack v. Wheelabrator Corp.*,
   993 F.2d 603 (7th Cir. 1993) ................................................................. 19

*Borgwarner Diversified Transmission Prods., Inc. v. UAW*,
   2006 WL 1328723 (S.D. Ind. May 12, 2006) ................................................................. 18

*Bowe Bell & Howell Co. v. Immco Employees' Ass'n*,
   2004 WL 1244143 (N.D. Ill. June 2, 2004) ................................................................. 13, 28

*Caterpillar, Inc. v. ESCO Corp.*,
   909 F.Supp.2d 1026 (C.D. Ill. 2012) ................................................................. 15, 27

*Cheatham v. RCA Rubber Co. of America*,
   2013 WL 3812104 (M.D. Tenn. 2013) ................................................................. 25, 29

*Cnty. Materials Corp. v. Allan Block Corp.*,
   431 F.Supp.2d 937 (W.D. Wisc. 2006) ................................................................. 11

*Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*,
   2004 WL 5627647 (D. Neb. Jan. 20, 2004) ................................................................. 21

*Crown Cork & Seal Co. v. United Steelworkers of Am.*,
   2004 WL 117923 (W.D. Pa. Jan. 9, 2004) ................................................................. 19, 20, 21

*Dewhurst v. Century Aluminum Co.*,
   2009 WL 5205353 (S.D. Ohio 2009) ................................................................. 25, 29

*Dewhurst v. Century Aluminum Co.*,
   649 F.3d 287 (4th Cir. 2011) ................................................................. 25

*E.E.O.C. v. University of Pennsylvania*,
   850 F.2d 969 (3d Cir. 1988) ................................................................. 24

*G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*,
   873 F.2d 985 (7th Cir. 1989) ................................................................. 11

*Haase v. Gilboy*,
   246 F. Supp. 594 (D.C. Wis. 1965) ................................................................. 31

*Honeywell Int'l Inc. v. UAW*,
   502 Fed.Appx. 201 (3d Cir. 2012) ................................................................. 19, 20, 21

*UAW v. Skinner Engine Co.*,
   188 F.3d 130 (3d Cir. 1999) ................................................................. 20

*UAW v. Yard-Man, Inc.*,
   716 F.2d 1476 (6th Cir. 1983) ................................................................. 19, 20

*Keffer v. H.K. Porter Co.*,
   872 F.2d 60 (4th Cir. 1989) ................................................................. 20

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) ................................................................. 18

*Maytag Corp. v. UAW*,
   2009 WL 350649 (S.D. Iowa Feb. 11, 2009) ................................................................. 15, 17, 18, 26

## <u>TABLE OF AUTHORITIES</u>

**Page**

*Millennium Prods. Inc. v. Gravity Boarding Co.*,
   127 F.Supp.2d 974 (N.D. Ill. 2000) ................................................................. 13, 15
*Mullins v. TRW, Inc.*,
   2002 WL 1480815 (E.D. Mich. June 28, 2002) ....................................................... 23
*Nat'l Tech., Inc. v. RepCentric Solutions*,
   2013 WL 3755052 (N.D. Ill. July 16, 2013) ................................................ 24, 27, 30
*New Page Wisconsin System Inc. v. USW*,
   651 F.3d 775 (7th Cir. 2011) ................................................................... 25, 28, 31
*NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*,
   28 F.3d 572 (7th Cir. 1994) ................................................................................ 9
*Redington v. Goodyear Tire & Rubber Co.*,
   2008 WL 3981461 (N.D. Ohio. 2008) ............................................................ 25, 29
*Reese v. CNH America LLC*,
   574 F.3d 315 (6th Cir. 2009) .............................................................................. 32
*Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*,
   626 F.3d 973 (7th Cir. 2010) .................................................... 15, 24, 26, 27
*Rexam, Inc. v. United Steelworkers of Am., AFL-CIO-CLC*,
   2003 WL 22477858 (D. Minn. Oct. 30, 2003) ................................................. passim
*Rossetto v. Pabst Brewing Co.*,
   217 F.3d 539 (7th Cir. 2000) ............................................................................ 20
*Serta, Inc. v. Oleg Cassini, Inc.*,
   2012 WL 2503959 (N.D. Ill. June 28, 2012) .................................................... passim
*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
   819 F.2d 746 (7th Cir. 1987) ........................................................................ 9, 10
*United Steel Workers of America Local 884, AFL-CIO v. Laclede Gas Company*,
   2010 WL 3721512 (E.D. Mo. 2010) ............................................................. 25, 29
*Washington Public Utilities Group v. U.S. Dist. Court*,
   843 F.2d 319 (9th Cir. 1987) ............................................................................ 31

**Statutes**
28 U.S.C. § 1404(a) .......................................................................................... 7, 24
29 U.S.C. § 1132(e)(2) ......................................................................................... 30

**Other Authorities**
12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 57.40 (3d ed. 2010) ............ 10, 11
WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2759 ................................. 9

**Rules**
FED. R. CIV. P. 23(e) ........................................................................................... 22
Local Civil Rule 40(D)(2) (W.D. Pa.) ...................................................................... 32

I.   **INTRODUCTION**

In a show of procedural gamesmanship, the USW[1] and counsel for certain named

defendants in this case ("Class Counsel")[2] ask this Court to dismiss the pending case or transfer

it to the Western District of Pennsylvania, Johnstown Division, where they believe they will have

a greater chance of success.  FreightCar America, Inc. ("FreightCar") has appropriately brought

this Declaratory Judgment action to clarify its right to terminate contributions toward retiree

health care benefits.  As explained in the attached declarations, FreightCar originally sought to

settle this dispute informally but was forced to seek confirmation of its rights once the USW and

Class Counsel unilaterally walked away from an agreement in principle that would have

provided for ongoing contributions by FreightCar to fund benefits for the individual defendants.

Courts addressing declaratory judgment actions filed by companies in similar situations have

allowed these lawsuits to proceed.  This matter is already proceeding in an incredibly efficient

manner before this Court; the vast majority of defendants have been served and the Court will set

a uniform date for their responses.

FreightCar, having its corporate headquarters and principal place of business in Chicago,

and conversely, a limited presence in Johnstown, is entitled to have this Court adjudicate its legal

obligations and rights.  Additionally, its selection of this Court as the proper venue is entitled to

deference because first, the USW and Class Counsel only filed their mirror-image lawsuit in

Johnstown *after* notice and receipt of FreightCar's action, and second, filed in Johnstown only in

---

[1] "USW" is the customary reference to the United Steel, Paper & Forestry, Rubber, Manufacturing, Energy, Allied Industrial & Service Workers International Union, AFL-CIO, CLC, which is the principal named defendant in the this action and one of the lead plaintiffs in *Zanghi v. FreightCar America, Inc.*, No. 13-146 (W.D. Pa.).

[2] Feinstein Doyle Payne & Kravec LLC has been counsel for the individual defendants named here since 2002 when this dispute began.  They currently represent Anthony Zanghi, Kenneth Sowers, Dominic McCuch, James Hohman, and Darrell Shetler in this action, and as named class representatives in *Zanghi v. FreightCar America, Inc.*, No. 13-146 (W.D. Pa.), the mirror-image lawsuit they brought in Johnstown with the USW after this case was filed.

order to benefit from the pervasive anger and bias against FreightCar for closing its manufacturing operations there in 2008.

There is nothing about this dispute that makes it improper to proceed in this Court. While the USW and Class Counsel claim that the adjudication of this action in Chicago will cause hardship to the individual defendants, Class Counsel is currently obtaining retainers to represent all of the individual defendants.  Class Counsel will (along with the USW) undoubtedly direct the arguments and strategy in this litigation on behalf of the individual defendants.  The individual defendants effectively constitute absent class members, who do not need to appear in court or file separate pleadings, wherever the case is heard.  It is only logical that Class Counsel represents all defendants, as they currently represent *the same exact individuals* in the putative class action Class Counsel brought after FreightCar filed this case, and previously represented them in two class action lawsuits in 2002, as well as throughout almost two years of recent negotiations which led to this lawsuit.

FreightCar has no calculated or nefarious motive for filing the instant action in this district.  In fact, there is no material difference in the law whether the case proceeds here or within the Third Circuit.  As shown below, FreightCar has brought this action in good faith, for the single purpose of obtaining an expeditious and unbiased determination of its legal rights in this dispute.  The USW and Class Counsel's motion to dismiss or transfer this action should be denied.

## II.   <u>BACKGROUND</u>

### A.   <u>Prior Litigation and Settlement</u>

Rather than restate the entire factual background set forth in FreightCar's Complaint for Declaratory Judgment (the "Complaint"), FreightCar incorporates the factual allegations set forth in Paragraphs 17 – 46 of the Complaint by reference.  (*See* Compl., Dkt. No. 1.)  Simply stated,

this action involves a dispute over company contributions paid to subsidize retiree medical benefits from the Steelworkers' Health and Welfare Fund (the "Fund").  (*See* Declaration of Thomas P. McCarthy, attached hereto as Exhibit A ("McCarthy Decl.") ¶¶ 7-14; Declaration of Nancy G. Ross, attached hereto as Exhibit B ("Ross Decl.") ¶¶ 3-16.)  Although the individual defendants are the persons eligible for such benefits, this dispute really is between FreightCar, the USW (on behalf of the Fund), and Class Counsel – who represents the individual defendants everywhere but here, where it is in the process of doing so.  (*See* Defendants' Urgent Motion to Stay Due Dates, Dkt. No. 22, ("Urgent Motion") at ¶ 6.)

As a result of two previous class action lawsuits, *Britt* and *Deemer*,[3] the USW and Class Counsel entered into a settlement agreement with FreightCar on February 28, 2005 (the "2005 Settlement Agreement").  The 2005 Settlement Agreement provided that FreightCar would make set monthly contributions to the Fund to subsidize the retirees' and surviving spouses' health insurance coverage until November 30, 2012, and continue life insurance benefits.  (*See* 2005 Settlement Agreement, Dkt. No. 16-3, at § 16)  If after November 30, 2012, FreightCar terminated those contributions, the parties would retain their respective legal positions that they had advanced in *Britt* and *Deemer*.  (*Id.*)

## B.  FreightCar's Attempt to Negotiate a New Agreement with the USW and Class Counsel

In anticipation of FreightCar's right to end contributions on November 30, 2012, FreightCar contacted the USW and Class Counsel in June 2011 in an effort to begin negotiations

---

[3] The prior litigation was captioned as *United Steelworkers of America, AFL-CIO-CLC, Reggie Britt, et al. v. Johnstown America Corporation*, No. 03-CV-1298 (W.D. Pa.) ("*Britt*" or "*Britt* litigation") and *United Steelworkers of America, AFL-CIO-CLC, Geraldine Deemer and Darrell Shetler, et al. v. Johnstown America Corporation*, No. 02-CV-806 (W.D. Pa.) ("*Deemer*" or "*Deemer* litigation").  Both cases were filed in the Pittsburgh Division of the Western District of Pennsylvania and Judge Robert Cindrich, and later Judge David Cercone, presided over them.  Magistrate Judge Robert Mitchell was also assigned to the case.  (*See* Dockets for *Britt* and *Deemer* Litigation, attached hereto as Exhibit C.)

for a new agreement after November 30 whereby FreightCar would continue contributions to the Fund on mutually-acceptable terms.  (Ross Decl. ¶ 3; McCarthy Decl. ¶ 9.)  In December 2012, FreightCar, the USW, and Class Counsel—who repeatedly represented that they were authorized to negotiate on behalf of the individuals named here as defendants—reached an agreement in principle.  (Ross Decl. ¶¶ 3-5; McCarthy Decl. ¶¶ 9-10.)  The parties thereafter drafted a term sheet, but the USW and Class Counsel gradually backed away from the agreement and, notwithstanding numerous revisions which they requested and which FreightCar accepted over the next five months, ultimately refused to sign the term sheet.  (Ross Decl. ¶¶ 9-15; McCarthy Decl. ¶¶ 10-12.)  On May 9, 2013, the USW and Class Counsel presented settlement terms which were materially different from what the parties had previously been discussing.  (Ross Decl. ¶ 14)  Frustrated that the USW and Class Counsel had reneged on the term sheet and continued to raise new issues after an agreement had been reached, on June 5, 2013 in a face to face meeting, FreightCar unilaterally rejected these new terms and informed the USW and Class Counsel that if the USW and Class Counsel did not sign the jointly-drafted term sheet by June 14, 2013, FreightCar would explore its full range of options.  (Ross Decl. ¶¶ 14-16; McCarthy Decl. ¶¶ 11-12.)

Not only did the USW and Class Counsel reject the term sheet presented at the June 5, 2013 meeting, they also insisted on an entirely new proposal first raised by them in May 2013, that was materially different from both the December 2012 agreement in principle and further discussions over the past five months.  (Ross Decl. ¶ 14; McCarthy Decl. ¶ 12.)  On June 14, 2013, by way of phone call, the USW and Class Counsel confirmed their unwillingness to sign the term sheet the parties jointly had drafted, and FreightCar confirmed unequivocally that negotiations were over and it would be considering its options.  (Ross Decl. ¶ 16; McCarthy

4

Decl. ¶ 12.)  Notwithstanding the fact that no agreement was consummated, FreightCar made

contributions on the terms provided for in the 2005 Settlement Agreement until October 1, 2013.

(McCarthy Decl. ¶ 13.)

   **C.   FreightCar's Declaratory Judgment Action in Illinois, and the USW and
         Class Counsel's Reactive Filing in Pennsylvania**

   On July 8, 2013, three weeks after negotiations ended, FreightCar filed this action in

order to seek clarification of its right to terminate or modify the retiree medical contributions and

life insurance benefits.  (*Id.* at ¶ 14.)  FreightCar filed in this Court because the company's

headquarters is located here, the plan is administered here, and the decisions over negotiations

and contributions were made here.  (McCarthy Decl. ¶¶ 3-5.)  FreightCar wanted prompt

adjudication of its rights, and had no idea if or when the USW or Class Counsel would

themselves seek a ruling.[4]  It made no sense for FreightCar to file in Johnstown, where it has no

material presence any longer, and where it likely would be prejudiced by serious animosity from

the retirees.  *See, e.g.*, David Hurst, "FreightCar, union in benefits row," The Tribune-Democrat

(July 15, 2013)*, available at* http://www.tribune-democrat.com/latestnews/x172474211/

FreightCar-union-benefits-row (discussing FreightCar litigation in Johnstown, Pennsylvania).

   After filing this Complaint late on July 8, 2013, FreightCar sent the USW and Class

Counsel a copy of the complaint the next morning on July 9, 2013, and asked Class Counsel to

accept service on behalf of the individual defendants named here, notably the same individuals

on whose behalf it claimed to be negotiating since June 2011.  (McCarthy Decl. ¶ 14; *see also*

Ross Decl., Ex. B (February 8, 2013 email from Joe Stuligross, Associate General Counsel of the

USW, noting that "we [Stuligross and Payne] have scheduled meetings with retirees . . . during

---

[4] The 2005 Settlement Agreement provides that the USW and Class Counsel have the right to file litigation only
when FreightCar's contributions end, which is not until October 2013.  (2005 Settlement Agreement at § 16(f).)

which we will explain the settlement and describe the new program of benefits to be put into place effective March 1").)  Class Counsel declined to accept or waive service.  (Ross Decl. ¶ 17.)  Because of Class Counsel's refusal to accept service for the individual defendants, FreightCar had no choice but to arrange for personal service on each of the individual defendants.[5]

Immediately after notice of the lawsuit filed by FreightCar the previous day, and FreightCar's request that Class Counsel accept service on the individual defendants' behalf, the USW and Class Counsel filed a virtually identical lawsuit later that afternoon in the Western District of Pennsylvania, Johnstown Division (the "Pennsylvania Action"), seeking to represent the same individual defendants named here and requesting a mirror image declaration that FreightCar **could not** modify or terminate their welfare benefits.  *See Zanghi v. FreightCar America, Inc.*, 13-CV-00146 (W.D. Pa.).  Notably, although the USW and Class Counsel had filed the earlier *Britt* and *Deemer* litigation in Pittsburgh, they chose to file their new action in Johnstown.  (*See* Dockets for *Britt* and *Deemer* litigation, attached hereto as Exhibit C.) Apparently to justify the new venue, they incorrectly claimed on the civil action sheet that the *Sowers* litigation (which addressed *pension* benefits payable to employees in connection with FreightCar's closing of a plant) was a related case.  (*See Zanghi* Civil Action Cover Sheet, attached hereto as Exhibit D; *Sowers* Complaint, attached hereto as Exhibit E.)  The USW and Class Counsel made no mention of the fact that the more accurately related cases, *Britt* and *Deemer,* were filed in Pittsburgh.

---

[5] On July 10, 2013, FreightCar mailed notice to 653 retirees and surviving spouses, advising them that FreightCar's contributions under the 2005 Settlement Agreement would end effective October 1, 2013.  (McCarthy Decl. ¶ 14.) Importantly, the termination of contributions is different from termination of benefits, which is determined by the USW.  (*Id.* at ¶ 6.)

### III.    ARGUMENT

The USW and Class Counsel have engaged in nothing but gamesmanship in filing an identical action in Johnstown immediately after receiving notice of this lawsuit.  They fail to provide any compelling reason for this Court to dismiss or transfer this case to Johnstown, where they hope to benefit from community bias and animosity towards FreightCar resulting from the prior plant closing.

FreightCar's dispute with the USW and Class Counsel is a classic example of a situation where declaratory relief is proper, both from a legal and administrative standpoint.  FreightCar's first-filed suit in its home district was not an improper or unwarranted anticipatory filing, and the USW and Class Counsel fail to carry their burden and show that transfer is proper under 28 U.S.C. § 1404(a).

Finally, the USW and Class Counsel's additional pending motion to stay defaults on the remaining defendants, which was one of *three* identical motions they filed in both this Court and the Johnstown Division, was unnecessary as FreightCar never had any intention to seek default judgments against the individual defendants while a motion was pending.  Regardless, it is now moot and Defendants have withdrawn it.  (*See* Dkt. Nos. 29, 33.)[6]  This Court should deny the USW and Class Counsel's remaining motions, and move this case to the adjudication stage for which it is ready.

---

[6] On 3:30 pm on Friday, August 16, the USW and Class Counsel inexcusably filed a motion to amend their motion to dismiss.  (*See* Dkt. No. 33.)  That motion is improper for many reasons, not the least of which is that it is based on arguments that all existed at the time of their original (already oversized) motion to dismiss and memorandum in support.  FreightCar reserves its arguments in opposition until this Court sets a briefing schedule on or before the hearing set for September 4, 2013.  (*See* Dkt. No. 34.)

**A.** **Declaratory Relief Is Appropriate to Clarify FreightCar's Rights and Obligations Under Its ERISA Plan**

In attempting to argue that FreightCar's claim under the Declaratory Judgment Act should be dismissed, the USW and Class Counsel omit, stretch, and distort the factual record to create the illusion that FreightCar filed this current lawsuit in the middle of negotiations, in anticipation of an immediate lawsuit by the USW and Class Counsel. Nothing could be further from the truth. FreightCar brought this action only after the parties engaged in almost two years of negotiation and only after the USW and Class Counsel refused to move forward with the agreement in principle which the parties had reached in December 2012.[7] (*See* Ross Decl. ¶¶ 3-16 and emails attached as Exs. A-D.) For over five months, FreightCar patiently and diligently attempted to address the USW and Class Counsel's issues with documenting the December 2012 agreement. (*Id.*) Only when the USW and Class Counsel backed away completely in June 2013, and *unequivocally* refused to sign the term sheet, did FreightCar ask this Court for relief. (*See* Ross Decl. ¶¶ 15-17; McCarthy Decl. ¶¶ 11-13.)

Courts in the Seventh Circuit have generally allowed declaratory relief to clarify uncertain rights in similar situations, and courts in neighboring jurisdictions have more specifically allowed declaratory relief under ERISA over retiree medical benefits in actions brought by the company in the face of settlement breakdowns. Despite the USW and Class Counsel's efforts to argue otherwise, this case is not an "administrative nightmare." Quite the contrary, the central parties to the dispute are FreightCar and the USW. The individual defendants need not, and likely will not, play any active role in this case. Recently, Class

---

[7] Certain class members in another case which did not involve the vesting of retiree medical benefits, *Sowers v. FreightCar America, Inc.*, No. 07-201 (W.D. Pa.), also became eligible under their own settlement in 2008 for contributions to retiree benefits under the 2005 Settlement Agreement. (*See* Dkt. No. 16-2.)

Counsel has finally admitted that it will represent the individual defendants here (as it already does in the Pennsylvania Action).  (*See* Urgent Motion at ¶ 6.)

1.  FreightCar Properly and in Good Faith Brought This Action to Seek a Prompt Adjudication of Its Right to Terminate Contributions to the Fund.

One of the primary purposes of the Declaratory Judgment Act is the adjudication of rights and obligations between parties when one of the parties has not yet exercised its ability to seek a coercive action.  As described by the Seventh Circuit, there are two primary situations where declaratory relief is warranted:

> A declaratory judgment is available where a party desires a declaration of the legal effect of a proposed or past course of action.  Essentially, two related but distinct fact situations are contemplated: (1) The controversy has ripened to a point where one of the parties could invoke a coercive remedy (i.e. a suit for damages or injunction) but has not done so; and (2) Although the controversy is real and immediate, it has not ripened to such a point, and it would be unfair or inefficient to require the parties to wait for a decision.

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).  While a district court has discretion to allow declaratory relief, the Seventh Circuit has instructed that a court properly exercises this discretion where the declaratory judgment will "settle[] a ripe dispute," relieve the "uncertainty and insecurity concerning [the parties'] legal relationship," or "serve the useful purpose of settling the contractual relationships."  *NUCOR Corp. v. Aceros Y Maquilas de Occidente, S.A. de C.V.*, 28 F.3d 572, 579 (7th Cir. 1994); *see also* WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE § 2759 (quoting BROCHARD, DECLARATORY JUDGMENTS 299 (2d ed. 1941)) ("The two principal criteria guiding the policy in favor of rendering declaratory judgment are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceedings.").  Additionally, "[t]his discretion should be liberally exercised to effectuate the purposes of the Declaratory

Judgment Act."  12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 57.40 (3d ed. 2010).

FreightCar's decision to terminate contributions to the Fund presents the "real and immediate" controversy recognized in *Tempco*.  There is no dispute that the USW and Class Counsel challenge FreightCar's decision to terminate Fund contributions.  Because of the significant reserve that FreightCar currently must carry on its balance sheet on account of this potential liability, and the uncertainty of the effect that the loss of these contributions will have on the retirees' benefits, "it would be unfair and inefficient" to delay adjudication.[8]  *See Tempco Elec.*, 819 F.2d at 749.

Although the 2005 Settlement Agreement provides that the USW and the class members from the *Britt*, *Deemer*, or *Sowers* litigation can bring a suit only if FreightCar stops paying contributions, it does not limit FreightCar's right to bring its own lawsuit.  (*See* 2005 Settlement Agreement at § 16(f).)  Since FreightCar is continuing contributions until October 2013, FreightCar could not foresee with any certainty that either the USW or Class Counsel would seek an immediate adjudication of the dispute.  It is proper for this Court to exercise its jurisdiction under the Declaratory Judgment Act because declaratory relief would settle the dispute between FreightCar, the USW, and Class Counsel and allow FreightCar to proceed forward with its decision regarding retiree medical benefits without fear of disruptive litigation.  *See* 12 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 57.42 (3d ed. 2010) ("Declaratory relief is appropriate when a declaratory judgment will serve a useful purpose in clarifying and settling the

---

[8] The retirees and surviving spouses are responsible for contributing to the cost of their benefits.  Whether the Fund will adjust benefit levels to continue to provide them remains within the USW's discretion.  Many of the retirees have access to Medicare as well.  (*See* McCarthy Decl. ¶ 6.)

legal relations in issue, and terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding.").

Despite the USW and Class Counsel's incorrect assertion that declaratory relief is only available when there is a "harassing adversary who has chosen to initiate suit at his leisure" (which nevertheless describes the situation here), courts commonly hear (and grant) actions seeking declaratory relief where a plaintiff announces a business decision which opens it up to potential legal liability in the future. *See G. Heileman Brewing Co. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 988-90 (7th Cir. 1989) (plaintiff properly sought declaratory relief regarding plans to sell beer with allegedly infringing trademark); *Cnty. Materials Corp. v. Allan Block Corp.*, 431 F.Supp.2d 937, 943-44 (W.D. Wisc. 2006) (plaintiff properly sought declaratory relief regarding plans to begin production of concrete blocks allegedly in violation of non-compete agreement). In both of these cases (as here), a plaintiff made a decision about future conduct that opened it up to potential liability, and properly brought a declaratory judgment to address the resulting uncertainty and insecurity caused by this liability without delay.

Courts also commonly allow declaratory judgments when, as here, settlement negotiations between the parties break down. Judge Dow's decision in *Serta, Inc. v. Oleg Cassini, Inc.*, 2012 WL 2503959 (N.D. Ill. June 28, 2012) is instructive. In *Serta*, the parties had a dispute over plaintiff's use of a trademarked name and engaged in negotiations to resolve the dispute without court involvement. *Id.* at *1. However, after two months of negotiation, and in response to an unreasonable monetary demand, the plaintiff filed a declaratory judgment in the Northern District of Illinois. *Id.* Defendant responded by filing its own action in the Southern District of New York and by moving to dismiss the Illinois action; defendant further argued that the first-filed action "aimed to deprive [defendant] of its rights as a natural plaintiff" to file a

coercive action. *Id.* at *2. The court refused to dismiss the first-filed action, finding that declaratory judgment was proper where plaintiff received an unreasonable settlement demand and "filed suit to resolve the impasse." *Id.* at *3.

The USW and Class Counsel's actions here, while similar, are even more egregious. The parties negotiated for almost two years over FreightCar's contributions to the Fund and eventually reached an agreement in principle. (*See* Ross Decl. ¶¶ 3-16 and emails attached as Exs. A-D.) FreightCar was fully engaged with the USW and Class Counsel in memorializing the terms shortly thereafter. (*Id.* at ¶ 9.) Nevertheless, for the next five months the USW and Class Counsel engaged in tactics that impeded the execution of a term sheet reflecting the previously agreed upon settlement terms. On May 9, 2013, the USW and Class Counsel proposed materially different settlement terms after almost two years of negotiations. (Id. at ¶ 14.) On June 5, 2013, in response to a final demand by FreightCar to sign the term sheet, the USW and Class Counsel abandoned the December 2012 agreement in principle and insisted upon the materially different arrangement. (*Id.* at ¶¶ 15-16.) A party may properly seek a declaratory judgment clarifying its rights in the face of such actions. *See Serta*, 2012 WL 2503959 at *2-3 (two months of negotiations followed by an unreasonable settlement demand "support retaining jurisdiction over the declaratory judgment action" under Seventh Circuit precedent); *see also Millennium Prods. Inc. v. Gravity Boarding Co.*, 127 F.Supp.2d 974, 979 (N.D. Ill. 2000) (noting that following unsuccessful negotiations plaintiff is not "required to sit idly by and wait for the process server to arrive" and that the purpose of the Declaratory Judgment Act is to remove a cloud of uncertainty on commercial activity).

In filing this action, there is no evidence that FreightCar engaged in the "procedural fencing," which gives courts the discretion not to hear a declaratory judgment action. FreightCar

has its corporate headquarters and principal place of business within this District; it no longer has

any manufacturing facilities in Johnstown.[9]  *See, e.g., Bowe Bell & Howell Co. v. Immco*

*Employees' Ass'n*, 2004 WL 1244143, at *5 (N.D. Ill. June 2, 2004) ("The plaintiff's initial

choice of forum is usually afforded substantial deference, particularly when it is the plaintiff's

home forum.").  Rather, the USW and Class Counsel themselves have engaged in procedural

fencing in asking the Court to send this case to the Johnstown Division of the Western District of

Pennsylvania, where they wasted no time in filing their own action after this case was filed.

What the USW and Class Counsel do not tell this Court—and cleverly avoid mentioning by

referring broadly to the Western District of Pennsylvania—is that they filed the *Britt* and *Deemer*

litigation, which presented this same unresolved dispute, in Pittsburgh, not Johnstown.  (*See*

Dockets of *Britt* and *Deemer* Litigation.)  Not only did the USW and Class Counsel misleadingly

represent to the Johnstown Division in the Pennsylvania Action that the *Sowers* litigation was

related, but the USW and Class Counsel wholly misrepresent the facts to this Court when they

(falsely) claim that the *Britt* and *Deemer* cases "were litigated in Johnstown."  (*See* Motion to

Dismiss, Dkt. No. 17, at p. 16.)

The USW and Class Counsel play fast and loose with the facts in arguing that FreightCar

should have known that an impending lawsuit would be filed if settlement efforts broke down

because they provided FreightCar with a (very rough) copy of a draft complaint in January 2013.

The USW and Class Counsel know full well that complaint was prepared after the parties

reached their agreement in principal, for the purpose of certifying a consensual global settlement

class, not for the purpose of filing a coercive class action if settlement discussions broke down.

---

[9] FreightCar only maintains an administrative center in Johnstown.  (*See* McCarthy Decl. ¶ 4.)

(*See* Ross Decl. ¶ 6.)  In fact, because the USW and Class Counsel refused to sign the term sheet, FreightCar never addressed their draft complaint.

The USW and Class Counsel also gravely distort the facts in arguing that FreightCar filed this action "while settlement negotiations were continuing."  More accurately, on June 5, 2013, at a face to face meeting, FreightCar presented the USW and Class Counsel with a deadline of June 14 to sign the term sheet (which it again provided), unequivocally stating that if not signed, FreightCar would consider the options at its disposal.  (Ross Decl. ¶ 15; McCarthy Decl. ¶ 11.) The USW and Class Counsel responded by refusing to sign, and insisting on a materially different arrangement from any of the three options proposed by the USW in December 2012, as well as the arrangement reflected in the term sheet, which FreightCar unequivocally rejected at the June 5 meeting.  (*Id.*)  When the USW and Class Counsel refused to sign the term sheet on the June 14th deadline, FreightCar, as it warned it would, considered its options and, three weeks later, exercised its legal right to resolve the dispute by filing a declaratory judgment under ERISA.  (McCarthy Decl. ¶¶ 13-14); *see Serta*, 2012 WL 2503959 at *3 (exercising jurisdiction under the Declaratory Judgment Act where the defendant proposed a subjectively unreasonable settlement demand and plaintiff "filed suit to resolve the impasse"); *Millennium Prods.*, 127 F.Supp.2d at 979 (exercising jurisdiction where plaintiff did not unnecessarily and preemptively end negotiations in order to gain a favorable litigation advantage).[10]

    2.    Courts Have Granted Declaratory Relief in
            Similar ERISA Retiree Medical Benefit Cases.

In addition to the case law from the Seventh Circuit favoring the retention of jurisdiction in factually analogous declaratory judgment actions, several courts in neighboring jurisdictions

---

[10] While the USW and Class Counsel cite *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.* and *Caterpillar, Inc. v. ESCO Corp.* in arguing that the Complaint should be dismissed, these cases actually dealt with a motion to transfer.  Accordingly, those cases are discussed in the following section.

have allowed declaratory judgments filed by companies to clarify ERISA obligations.  In both *Rexam, Inc. v. United Steelworkers of Am., AFL-CIO-CLC*, 2003 WL 22477858 (D. Minn. Oct. 30, 2003) and *Maytag Corp. v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 2009 WL 350649 (S.D. Iowa Feb. 11, 2009), courts found that declaratory relief was proper when a company filed an action against a union and a group of retirees even though the union and retirees filed mirror-image lawsuits in another jurisdiction seeking the same relief days later.

The facts in each case are strikingly similar to the facts surrounding FreightCar's pending lawsuit in the Northern District of Illinois.  In *Rexam*, the court noted a number of influential factors in deciding to retain jurisdiction over the first-filed case.  First, there was no evidence that the company "filed this action as an improper preemptive strike."  Specifically, the company initiated its declaratory judgment action "several months after its final communication with Defendants regarding a possible lawsuit" and there was "no evidence suggesting that Rexam knew of Defendants' litigation strategy and rushed to file in Minnesota."  *Rexam*, 2003 WL 22477858 at *3.

Likewise, FreightCar did not file its declaratory judgment action until over a month after it informed the USW and Class Counsel that without a signed term sheet by June 14, 2013, it would pursue all available options.  The USW and Class Counsel have presented no evidence that FreightCar filed this lawsuit in anticipation of defendants' litigation strategy, other than referencing a draft complaint that was shared with FreightCar over six months before FreightCar filed suit – solely for the purpose of effectuating a contemplated settlement.  *Id.*  Second, both Rexam and FreightCar had a strong interest in seeking declaratory relief besides choosing the forum.  Rexam had encountered previous and costly litigation regarding retiree health benefits,

in the form of individual grievances, which would likely continue; Rexam was also forced to

reflect a $79 million liability on its balance sheet as a result of its uncertain legal obligations. *Id.*

FreightCar also dealt with previous litigation, specifically *Britt* and *Deemer*, which was likely to

continue after contributions under the 2005 Settlement Agreement ended, and carries a

significant balance sheet reserve relating to this potential retiree benefits liability.[11]  (*See*

McCarthy Decl. ¶ 6.)  Finally, the court found that filing a lawsuit in Minnesota showed little

evidence of forum shopping because the company had "legitimate connections to Minnesota"

even though, unlike here, its corporate headquarters was not there.  *Id.*

 *Maytag* also contains a number of striking similarities to the case at hand.  There, the

court focused on two issues that led it to favor the first-filed company-initiated action over the

later-filed union-initiated action.  First, the company had no "notice of an imminent lawsuit."

*Maytag Corp.*, 2009 WL 350649 at *7.  Importantly, the court distinguished between reasonable

apprehensions that a controversy existed and notice that an actual lawsuit was imminent; the

court held that only specific knowledge of an actual lawsuit creates an exception to the first-filed

rule.  *Id.*; *see also Rexam*, 2003 WL 22477858 at *5 ("USWA and its retirees were undoubtedly

preparing their complaint before Rexam filed, but this does not mean that Rexam knew of

USWA's impending suit[.]").  Like Maytag, FreightCar also had a reasonable apprehension

(based on the *Britt* and *Deemer* litigation) that its decision to terminate retiree medical benefits

would result in a lawsuit at some unknown point in the future, but had no knowledge that

---

[11] In FreightCar's 2012 10-K, the company reported that its potential obligation to the individual defendants
accounted for a substantial portion of its $69.3 million recorded postretirement benefit plan obligations as of
December 31, 2012.  As disclosed by FreightCar in that filing with the SEC, the company's ". . . recorded
postretirement benefit plan obligation assumes for accounting purposes a continuation of [the monthly payments
remitted under the 2005 Settlement Agreement] after November 30, 2012 (as permitted under the settlement).
However, the Company's postretirement benefit plan obligation could significantly increase or decrease if payments
were to cease, if litigation should ensue or if the parties agree on a modified settlement."  *See* FreightCar America,
Inc., Annual Report (Form 10-K) (December 31, 2012) at Note 11 to Consolidated Financial Statements, "Employee
Benefit Plans."

litigation was imminent.[12]  Second, in *Maytag* there were no indicia that the declaratory

judgment was being used for an improper purpose.  *Maytag*, 2009 WL 350649 at *7; *see also*

*Borgwarner Diversified Transmission Prods., Inc. v. United Auto., Aerospace, Agric. Implement*

*Workers of Am.*, 2006 WL 1328723, at *5 (S.D. Ind. May 12, 2006) (refusing to dismiss

declaratory judgment where the court was "unable to conclude that [plaintiff] has engaged in the

'procedural fencing' that Defendants accuse it of having undertaken").  "One indication that a

plaintiff is using the declaratory judgment statute for its proper purpose is whether the plaintiff

encountered circumstances indicating the need for a declaratory judgment."  *Maytag*, 2009 WL

350649 at *7.  In *Maytag*, those circumstances were the union's refusal to bargain over retiree

benefits and the uncertainty created by the union's contention that the company's actions were

illegal.  *Id.* at *8.  FreightCar also faces a union which has effectively made negotiations over

retiree benefits impossible (by backing out of agreements and materially changing details at the

last minute) and has created uncertainty over a significant potential liability on the company's

books.  (*See* McCarthy Decl. ¶ 6.)

　　　While the USW and Class Counsel argue that courts in other circuits have refused to

exercise jurisdiction over declaratory judgments involving retiree medical benefits, these cases

are distinguishable in two important respects.  First, cases cited by the USW and Class Counsel

involve companies preemptively filing a declaratory judgment in a forum with *more favorable*

*law* regarding retiree medical benefits than the union's choice of forum.  In *Crown Cork*,

---

[12] In the Pennsylvania Action, the USW and Class Counsel disingenuously argue that FreightCar's allegation in the Complaint of the existence of an actual case or controversy is an admission that FreightCar filed its lawsuit in anticipation of an imminent lawsuit.  Defendants misunderstand the law.  The noted existence of a case or controversy does not automatically translate into an imminent threat of litigation.  *See Manuel v. Convergys Corp.*, 430 F.3d 1132, 1137 (11th Cir. 2005) (distinguishing a "case or controversy" supporting a declaratory judgment action from an imminent threat of litigation.); *Maytag*, 2009 WL 350649 at *7 (finding that a reasonable apprehension of litigation did not render company's lawsuit anticipatory where the union "made no mention of *immediate* plans to file a lawsuit") (emphasis added).

*Honeywell*, and *ACF Industries*, the companies filed their declaratory judgment actions presumably in an effort to avoid the Sixth Circuit's *Yard-Man* employee-favorable presumption. *See, e.g., Crown Cork & Seal Co. v. United Steelworkers of Am.*, 2004 WL 117923, *1 (W.D. Pa. Jan. 9, 2004) (noting that the company filed in a jurisdiction "which would be more favorable to employers in retiree medical cases" than the Sixth Circuit, which follows the *Yard-Man* presumption).[13]  The cases cited by the USW and Class Counsel follow a pattern where the company filed a declaratory judgment in a court where the *Yard-Man* presumption was not applicable, while the union and retirees tried to file the case where the *Yard-Man* presumption controlled.[14]  Here, the risk of unfavorable law cannot be FreightCar's motive for filing this action, as both the Seventh Circuit and the Third Circuit (where the Pennsylvania Action is pending) have rejected the *Yard-Man* presumption.[15]  Accordingly, the concern of forum shopping at the center of each of the ERISA retiree medical cases cited by the USW and Class Counsel does not exist here.

---

[13] Unlike pension benefits, welfare benefits do not statutorily vest under ERISA.  *See Bidlack v. Wheelabrator Corp.*, 993 F.2d 603, 604-05 (7th Cir. 1993).  To establish that retiree welfare benefits are vested, plan participants must show that they were promised vested welfare benefits under a written contract.  *Id.* at 605.  Courts that follow *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Yard-Man, Inc.*, 716 F.2d 1476 (6th Cir. 1983) recognize a presumption that the parties intended benefits to vest when benefits are conferred by a collective bargaining agreement.  Courts that do not follow *Yard-Man*, including the Seventh and Third Circuits, require affirmative and express language in a collective bargaining agreement to establish vesting.  *See Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 543 (7th Cir. 2000).

[14] *See Crown Cork & Seal Co. v. United Steelworkers of Am.*, 2004 WL 117923, *1 (W.D. Pa. Jan. 9, 2004) (noting that the company filed in a jurisdiction "which would be more favorable to employers in retiree medical cases" than the Sixth Circuit, which follows the *Yard-Man* presumption).  In the other two cases, the courts dismissed the earlier action in favor of a jurisdiction that followed the *Yard-Man* presumption.  *See Honeywell Int'l Inc. v. International Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 502 Fed.Appx. 201, 203 (3d Cir. 2012) (company filed in Third Circuit, union filed in Sixth Circuit); *ACF Indus. LLC v. Chapman*, 2004 WL 3178257 (E.D. Mo. Aug. 26, 2004) (dismissing case in favor of one filed in Fourth Circuit); *see also Keffer v. H.K. Porter Co.*, 872 F.2d 60, 62 (4th Cir. 1989) (quoting *Yard-Man*).

[15] *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Skinner Engine Co.*, 188 F.3d 130, 141 (3d Cir. 1999) ("We will therefore interpret the relevant provisions of the CBAs without the benefit of the inference established by *Yard-Man*."); *Rossetto v. Pabst Brewing Co.*, 217 F.3d 539, 543 (7th Cir. 2000) (noting Seventh Circuit precedent "established a presumption that an employee's entitlement to [health] benefits expires with the agreement creating the entitlement").

The cases cited by the USW and Class Counsel are further distinguished because none involved the situation here, where negotiations reached an impasse or standstill.  Rather, in the cases cited, the plaintiff company actively avoided negotiation.  In *Honeywell*, the company did not file a declaratory judgment until *after it agreed to a new collective bargaining* agreement with disputed language on retiree medical benefits.  *See Honeywell Int'l Inc. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am.*, 502 Fed.Appx. 201, 203 (3d Cir. 2012).  None of the other cases cited mention any attempts to settle the dispute; instead, the company made the decision without negotiating with the union or retiree representatives and later notified the retirees of its decision.  *See ACF Indus. LLC v. Chapman*, 2004 WL 3178257, at *1 (E.D. Mo. Aug. 26, 2004); *Crown Cork & Seal Co. v. Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO*, 2004 WL 5627647, at *1 (D. Neb. Jan. 20, 2004); *Crown Cork & Seal Co. v. United Steelworkers of Am., AFL-CIO-CLC*, 2004 WL 117923, at *1 (W.D. Pa. Jan. 9, 2004).  That is not the case here.  FreightCar's continued attempts at settlement dispel any presumption of bad faith.  *See also Rexam*, 2003 WL 22477858 (company and union negotiated over changes to prescription drug benefit provisions for ten months before failing to reach an agreement); *Maytag*, 2009 WL 350649 at *1 (company filed declaratory judgment after union refused to bargain over modifications to retiree medical benefits).

> 3.     This Case Has Already Proceeded in an Administratively
>        <u>Efficient Manner, and Will Continue to Do So.</u>

The USW and Class Counsel baldly assert, without any supporting case law, that this case should be dismissed for reasons of judicial economy.  Their argument centers on a very wrong premise, that the individual defendants will need to appear.  As a practical matter, the primary parties to this dispute are FreightCar and the USW.  Class Counsel has recently admitted that it is in the process of obtaining retainers to represent each of the defendants (*see* Urgent

Motion), which it should have no problem obtaining as it represented the same individuals in *Britt*, *Deemer*, and *Sowers*, and spent almost the last two years negotiating on their behalf.[16]  (*See* Ross Decl., Ex. B (February 8, 2013 email from Joe Stuligross, Associate General Counsel of the USW, noting that "we [Stuligross and Payne] have scheduled meetings with retirees . . . during which we will explain the settlement and describe the new program of benefits to be put into place effective March 1").)

As was the case in *Britt* and *Deemer*, the USW and Class Counsel will direct the legal arguments in this case on behalf of the individual defendants.  There is no need to seek discovery from these individual defendants, as the factual record was developed in *Britt* and *Deemer*, and there is no evidence that any of these individual defendants were involved in the relevant contract negotiations.

While the USW and Class Counsel prey on this Court's sympathies in painting FreightCar as a corporate Goliath seeking personal service of the complaint on aging and frail retirees, in fact, Class Counsel *themselves* were asked to accept service on the individual defendants' behalf, and refused.[17]  (Ross Decl. ¶ 17.)  Furthermore, in its August 7, 2013 Order, the Court effectively struck the various response deadlines applicable to the individual defendants and may now set a single uniform date for all individual defendants in this case to respond to the Complaint, and by that time Class Counsel will undoubtedly have obtained the retainers they claim necessary, allowing them to file one response on all defendants' behalf.  (*See* Urgent Motion.)

---

[16] Class Counsel surely has the addresses of each of these individuals, as it no doubt sent them notice of the *Britt, Deemer*, and *Sowers* settlements.  *See* FED. R. CIV. P. 23(e).

[17] FreightCar would gladly accept an offer by Class Counsel to accept service on any remaining individual defendants.  Service is proceeding much more efficiently than the USW and Class Counsel would have this Court believe.  As of the date of filing, the vast majority of defendants – 532 of the 652 individuals named in this action – have been served.  (Ross Decl. ¶ 18.)

The USW and Class Counsel's last two arguments about judicial economy are equally meritless. While they claim that the Pennsylvania Action differs from this case because FreightCar has not brought an LMRA claim, that is of no moment. Both the LMRA and ERISA address the exact same issue before this Court, namely whether FreightCar can cease contributions toward retiree medical benefits. *See Mullins v. TRW, Inc.*, 2002 WL 1480815, at *3 n.3 (E.D. Mich. June 28, 2002) (noting that if plaintiffs prevail on their ERISA claims, they will not need discovery on their LMRA claim because they "seek identical relief"). Moreover, nothing prevents defendants from alleging an LMRA counterclaim in this case.

Defendants also wrongly argue, not surprisingly without factual support, that FreightCar has not sued all the individuals who would be included in the class for the Pennsylvania Action, only noting that there are "likely" unnamed class members. (*See* Dkt. No. 17 at p. 17.) As demonstrated by Tom McCarthy's declaration, FreightCar has named as defendants all retirees and surviving spouses on whose behalf the contributions at issue are made. (*See* McCarthy Decl. ¶ 14.)

In response to heavy-handed tactics by the USW and Class Counsel which destroyed the parties' December 2012 agreement in principle that would have resulted in continued benefits for the individual defendants, FreightCar has no choice but to seek declaratory relief under ERISA to confirm its legal rights and obligations. The USW and Class Counsel's arrogant assertion that only they can file suit, and that FreightCar must stand idly by and wait with uncertainty as to whether the USW or Class Counsel will file a lawsuit, is contrary to the law of this Circuit. FreightCar has a legitimate business dispute properly before this Court.

**B.**      **There Is No Good Reason to Transfer This Case to the Western District of Pennsylvania**

In seeking to transfer venue pursuant to 28 U.S.C. § 1404(a), the USW and Class Counsel bear the burden of proving that the Western District of Pennsylvania is "clearly more convenient" than the Northern District of Illinois.  *See Nat'l Tech., Inc. v. RepCentric Solutions*, 2013 WL 3755052, at *6 (N.D. Ill. July 16, 2013).[18]  In determining whether a transferee court is clearly more convenient, courts consider the convenience of the parties and witnesses and the interests of justice.  *See* 28 U.S.C. § 1404(a).  Although the Seventh Circuit "does not rigidly adhere to a first-to-file rule," when there are "two identical lawsuits and one party moves to transfer to the other forum," a court should still "consider the order in which the suits were filed among the factors it evaluates under 28 U.S.C. § 1404(a)."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 980, 982 (7th Cir. 2010).[19]

Here, the convenience of the parties and witnesses and the interests of justice do not show that the Western District of Pennsylvania is "clearly more convenient" than this Court.  The primary parties in this dispute are the USW and FreightCar.  (*See* McCarthy Decl. ¶¶ 7-8.)  The individual defendants will be adequately represented by Class Counsel upon receipt of retainers.[20]  As discussed, the USW and Class Counsel litigate cases similar to this one all over

---

[18] The district court may make factual findings to determine proper venue and may consider affidavits or other relevant documents.  *Nat'l Tech.*, 2013 WL 3755052 at *6.

[19] FreightCar has moved to dismiss the Pennsylvania Action under the Third Circuit's first-filed rule.  Courts in the Third Circuit strongly adhere to that rule, and disregard it only in "exceptional circumstances."  *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 979 (3d Cir. 1988).  After having received FreightCar's motion to dismiss and supporting memorandum of law, Judge Gibson of the Johnstown Division ordered that the USW and Class Counsel provide an expedited response by August 13, 2013.

[20] While one individual defendant has written the Court requesting that the case be transferred to Johnstown, the defendant's fears of not having the case proceed in Johnstown are understandable, but unwarranted.  (*See* Dkt. No. 30.)  As described above, there will be no physical or financial hardship because Class Counsel is in the process of obtaining waivers from all individual defendants, and there will be no need for the defendant to travel to Chicago when represented by counsel.

the nation and Class Counsel commonly proceeds in these cases with only named class

representatives as clients.[21]

        1.      The First-Filed Rule Requires that FreightCar's Action
                   Trump the Lawsuit Filed Later by the USW and Class Counsel.

      The USW and Class Counsel's motion to dismiss renders the mistaken impression that

courts in the Seventh Circuit *never* follow the first-filed rule and *always* dismiss an earlier-filed

action if it is not brought by so-called "natural plaintiffs."[22]  That is not correct.  Courts in this

district (and other districts within the Seventh Circuit) follow the first-filed rule even when a

party brings a declaratory judgment, when the declaratory judgment action is not an "improper

anticipatory filing."  *See Serta*, 2012 WL 2503959 at *2-3; *see also Borgwarner*, 2006 WL

1328723 at *5 (refusing to dismiss declaratory judgment where the court was "unable to

conclude that [plaintiff] has engaged in the 'procedural fencing' that Defendants accuse it of

having undertaken").  As the Seventh Circuit itself stated in its holding in *Research Automation*,

a court should "consider the order in which the [duplicative] suits were filed among the factors it

evaluates under" a motion to transfer.  *Research Automation*, 626 F.3d at 982.

      Again, *Serta* is instructive.  In *Serta*, plaintiff filed a declaratory judgment after

settlement negotiations with defendant broke down.  2012 WL 2503959 at *1.  Shortly

thereafter, defendant filed a coercive action in another district and sought to dismiss plaintiff's

first-filed declaratory judgment because the defendant was the "natural plaintiff."  *Id.* at *2.  The

---

[21] *See, e.g., New Page Wisconsin System Inc. v. USW*, 651 F.3d 775 (7th Cir. 2011) (notably a case holding that subject matter jurisdiction and personal jurisdiction were proper in a company-initiated declaratory judgment); *United Steel Workers of America Local 884, AFL-CIO v. Laclede Gas Company*, 2010 WL 3721512 (E.D. Mo. 2010); *Dewhurst v. Century Aluminum Co.*, 649 F.3d 287 (4th Cir. 2011); *Cheatham v. RCA Rubber Co. of America*, 2013 WL 3812104 (M.D. Tenn. 2013); *Dewhurst v. Century Aluminum Co.*, 2009 WL 5205353 (S.D. Ohio 2009); *Redington v. Goodyear Tire & Rubber Co.*, 2008 WL 3981461 (N.D. Ohio. 2008).
[22] Furthermore, here, FreightCar is as much the "natural plaintiff" as the individual defendants.  Notwithstanding one and a half years of negotiations, FreightCar has been injured by the inability to resolve this significant long-term potential liability.  *See Rexam*, 2003 WL 22477858 at *3.

court disagreed, finding that the defendant failed to offer any evidence that the first-filed action was filed in anticipation of an imminent lawsuit. *Id.* Since the defendant also failed to carry its burden in showing that the transferee district was a more convenient forum than the Northern District of Illinois, the court followed the first-filed rule and refused to transfer the declaratory judgment action. *Id.* at *4.

As described above, the evidence defeats any argument that FreightCar filed this declaratory judgment in anticipation of an imminent lawsuit. *See Maytag*, 2009 WL 350649 at *7 (holding that whether plaintiff had a "reasonable apprehension that a controversy existed sufficient to satisfy the constitutional requirements for a declaratory judgment . . . is not equivalent to an imminent threat of litigation"). As in *Serta*, FreightCar's first to file action deserves deference over the USW and Class Counsel's copycat lawsuit. *See Serta*, 2012 WL 2503959 at *4.

The cases the USW and Class Counsel cite in support of their request for transfer do nothing to advance their argument. In *Research Automation*, the Seventh Circuit affirmed the transfer of the first-filed case to another district because the location and sources of proof slightly favored the other forum and the material events of the case all occurred in the other forum. 626 F.3d at 978. As described in more detail below, no sources of proof remain at issue, as the dispute was the subject of two earlier lawsuits with thorough discovery, and the material events surrounding the company's decision to terminate contributions occurred in Chicago. (*See* McCarthy Decl. ¶¶ 3-5.) Conversely, Johnstown's only connection to this case is that some of the individual defendants, who have no active role in the proceedings, live there.

In *Caterpillar, Inc. v. ESCO Corp.*, 909 F.Supp.2d 1026, 1032-33 (C.D. Ill. 2012), a case cited by the USW and Class Counsel, the court held that transfer to another district was proper

because it would allow the court to avoid substantial questions about personal jurisdiction and necessary parties.  That issue does not exist here, as ERISA provides for nationwide personal jurisdiction and FreightCar has named all parties who may be affected by its actions.  *See* 29 U.S.C. § 1132(e).  The court also departed from the first-filed rule because it found earlier that the plaintiff filed the suit in response to an implicit threat to sue, a fact pattern not present in this case.  *See Caterpillar*, 909 F.Supp.2d at 1036.  Try as they might, the USW and Class Counsel have failed to present any grounds for this Court to ignore the first-filed doctrine.

        2.     <u>Transfer Would Not Promote Convenience of the Parties and Witnesses</u>.

"In deciding whether transfer would promote convenience, courts weigh the plaintiff's choice of forum, the convenience of the parties, 'the availability of and access to witnesses, . . . the location of material events and the relative ease of access to sources of proof.'"  *Nat'l Tech.*, 2013 WL 3755052 at \*7 (quoting *Research Automation*, 626 F.3d at 978).  As a corporation with its headquarters and principal place of business in Chicago, FreightCar is entitled to have its rights and obligations under the benefit plan at issue determined by the Northern District of Illinois where it filed an action first in its home district.  A plaintiff's choice of forum is often entitled to deference.  *See, e.g., Bowe Bell & Howell Co.*, 2004 WL 1244143 at \*5 ("The plaintiff's initial choice of forum is usually afforded substantial deference, particularly when it is the plaintiff's home forum.").  In contrast, the USW and Class Counsel seek to transfer the case to Johnstown, where neither FreightCar, the USW, nor even Class Counsel resides.  (*See* McCarthy Decl. ¶¶ 3-4.)

Notably, the USW and Class Counsel filed *Britt* and *Deemer* in Pittsburgh, not Johnstown.  The individual defendants reside not only throughout Pennsylvania, but throughout the United States.  (Compl., at ¶ 15 (noting that defendants live in North Carolina, South Carolina, Florida, Oklahoma, and Tennessee)); *see Rexam*, 2003 WL 22477858 at \*7 (noting that

transferee district is not more convenient where retiree defendants are spread out throughout the country).  There simply is not a sufficient material nexus of this action to Johnstown to necessitate transfer, and the USW and Class Counsel's attempts to benefit from local community bias and animosity in seeking a transfer should not be condoned.

Nor do the relative resources of the parties favor transfer to Johnstown.  The USW undisputedly has the resources to vigorously pursue its own interests and those of the other defendants before this Court.  Undeniably, the USW is the largest labor union in North America with over 600,000 members.[23]  The USW has extensive experience litigating these types of claims on behalf of its members, and has done so in many jurisdictions throughout the United States.[24]  Furthermore, Class Counsel has litigated cases of this type in numerous districts throughout the United States, and has argued vigorously in cases nationwide that they are equipped to represent the interests of large numbers of retirees.[25]  Financial resources and relative sophistication of the parties and their counsel present no barrier to the defendants' pursuit of their claims in the Northern District of Illinois.[26]

Furthermore, discovery was completed in *Britt* and *Deemer*, cross-motions for summary judgment had been addressed, and the case was ready for trial.  In the event that additional discovery is necessary, relevant documents and witnesses, to the extent not previously produced, are likely to exist in Chicago, not Pennsylvania.  *APV North America, Inc. v. Transindustrial*

---

[23] Office of Labor-Management Standards. Employment Standards Administration. U.S. Department of Labor. Form LM-2 Labor Organization Annual Report, United Steelworkers of America. File No. 000-094 (Dated March 31, 2009).

[24] *New Page Wisconsin System Inc. v. USW*, 651 F.3d 775 (7th Cir. 2011); *United Steel Workers of America Local 884, AFL-CIO v. Laclede Gas Company*, 2010 WL 3721512 (E.D. Mo. 2010).

[25] *See Dewhurst v. Century Aluminum Co.*, 649 F.3d 287 (4th Cir. 2011); *Cheatham v. RCA Rubber Co. of America*, 2013 WL 3812104 (M.D. Tenn. 2013); *Dewhurst v. Century Aluminum Co.*, 2009 WL 5205353 (S.D. Ohio 2009); *Redington v. Goodyear Tire & Rubber Co.*, 2008 WL 3981461 (N.D. Ohio. 2008).

[26] While the USW and Class Counsel argue that the relative resources of the individual defendants favor transfer to Johnstown, these individual defendants are akin to nominal defendants in this case, and regardless, Class Counsel is already making arrangements to represent them.  (*See* Urgent Motion.)

*Development Corp.*, 2006 WL 51169, at \*5 (N.D. Ill. Jan. 3, 2006) (denying motion to transfer because, among other things, the sources of proof were in Illinois).  The individual defendants who do live in Johnstown did not negotiate the relevant documents in dispute, played no active role in *Britt* and *Deemer*, and provide no basis to transfer the case to that district.

The facts and issues underlying this case were litigated substantially before Judge Cindrich from 2002-2004 before the parties reached a settlement.  The factual record has been developed.  The task for this Court is to review the record and apply the law.  No hardship will result to individual defendants, who are in the process of being represented by Class Counsel, in having this dispute resolved in Illinois.

        3.     <u>Transfer Would Not Be in the Interest of Justice.</u>

"Relevant to whether the transfer is 'in the interest of justice' are such factors as 'docket congestion and likely speed to trial in the transferor and potential transferee forums, . . . each court's relative familiarity with the relevant law, . . . the respective desirability of resolving controversies in each locale, . . . and the relationship of each community to the controversy[.]'" *Nat'l Tech.*, 2013 WL 3755052 at \*7 (quoting *Research Automation*, 626 F.3d at 978).  First, the public interest in having this litigation proceed in the Northern District of Illinois is readily apparent from the fact that FreightCar is headquartered in the district.  *See Adventus Americas Inc. v. Innovative Environmental Techs., Inc.*, 2007 WL 704938, at \*11 (N.D. Ill. Mar. 5, 2007) ("Generally speaking, Illinois has a strong interest in adjudicating injuries to the [federal statutory] rights of its corporate citizens.").  The day-to-day operations of the company are managed from its offices in Chicago, and the effect of the judgment on the company will be felt most palpably in that jurisdiction.  Importantly, the Northern District of Illinois satisfies all grounds for proper venue in ERISA cases – FreightCar is headquartered there, the Plan is

administered there, and the acts giving rise to the claims asserted here took place in that district. *See* 29 U.S.C. § 1132(e)(2).

Second, litigation would be more manageable in the Northern District of Illinois than Johnstown.  As mentioned above, the USW and class counsel have substantial resources to pursue their claims.  Class Counsel has litigated within the Seventh Circuit on a number of occasions.  *See, e.g.*, *NewPage Wisconsin System Inc. v. United Steel, Paper & Forestry, Rubber, Mfg. Energy Allied Indus. and Service Workers Intern. Union, AFL-CIO/CLC*, 651 F.3d 775 (7th Cir. 2011).  Since neither the USW nor Class Counsel reside in Johnstown, travel to the courthouse will be required whether in Johnstown or Illinois.  The individual defendants will not likely need to physically appear in court, particularly in a case which depends on interpretation of collective bargaining agreements and where Class Counsel is in the process of obtaining retainers to represent them.

Fairness also dictates that the matter not be transferred to Johnstown.  *See, e.g.*, *Washington Public Utilities Group v. U.S. Dist. Court*, 843 F.2d 319, 327 (9th Cir. 1987) (affirming change of venue to a place "not permeated by pervasive prejudicial publicity").  While FreightCar currently employs a relatively small number of salaried employees in Johnstown, the closure in 2008 of the Johnstown plant resulted in substantial lay-offs.  The negative media coverage surrounding the plant closure was significant, and was exacerbated by the subsequent *Sowers* lawsuit in the Johnstown division.[27]  In the event that this case proceeds to trial, the possibility of bias is real and weighs heavily against transfer to Johnstown.  *See, e.g.*, *Haase v. Gilboy*, 246 F. Supp. 594, 595 (D.C. Wis. 1965) (finding transfer appropriate when

---

[27] *See, e.g.*, David Hurst, "FreightCar, union in benefits row," The Tribune-Democrat (July 15, 2013)*, available at* http://www.tribune-democrat.com/latestnews/x172474211/FreightCar-union-benefits-row (discussing FreightCar litigation in Johnstown, Pennsylvania).

unfavorable publicity concerning a defunct corporation and its officers raised possibility of unfair trial).

4.      If This Case Must Be Transferred, It Should Be
Transferred to Judge Cercone in the Pittsburgh Division.

While the USW and Class Counsel disingenuously identified the *Sowers* litigation as a "related" case on their case designation sheet accompanying their complaint in Pennsylvania, much like they misrepresent that *Britt* and *Deemer* were litigated in Johnstown, it is readily apparent that the claims here more closely resemble those in *Britt* and *Deemer*.[28]  *Sowers* involved a one-count complaint claiming a violation of ERISA § 510 for alleged interference with pension vesting.  (*See Sowers* Complaint.)  The court in *Sowers* never addressed whether retiree medical benefits vested and could not be changed.  In fact, the *only* real connection between the Pennsylvania Action and *Sowers* is that the members of the *Sowers* class were permitted to participate in the *Britt* and *Deemer* settlement.[29]

If this action must be transferred, a result at odds with established precedent, it should not be transferred to the Johnstown Division, but rather to Judge Cercone of the Pittsburgh Division, where the *Britt* and *Deemer* actions were pending when settled.  (*See* Dockets in *Britt* and *Deemer* Litigation.)  In *Britt* and *Deemer,* Magistrate Judge Mitchell and Judge Cindrich both addressed the same issue at the center of this case, specifically, whether the health and life insurance benefits at issue were vested under prior collective bargaining agreements.  Upon Judge Cindrich's resignation from the bench, Judge Cercone inherited those lawsuits.  The Pittsburgh Division therefore is the logical venue, in the event that this Court determines that

---

[28] Under the Local Rules for the Western District of Pennsylvania, cases that "involve[] the same issues of fact, or grow[] out of the same transaction of another action" should be transferred to the same judge.  *See* Local Civil Rule 40(D)(2), U.S. District Court for the Western District of Pennsylvania.

[29] As further evidence of the disparate nature of the actions, the *Sowers* plaintiffs did not identify either the *Britt* litigation or the *Deemer* litigation as a related case when they filed their complaint.  (*See Sowers* Civil Cover Sheet, attached hereto as Exhibit F.)

29

transfer is warranted. *See, e.g.*, *Reese v. CNH America LLC*, 574 F.3d 315, 320 (6th Cir. 2009) (affirming district court's refusal to transfer based on the fact that the case was similar to another case already before the judge, "giving him a leg up on the legal and factual issues presented" and thereby furthering the objective of "trying the case expeditiously and inexpensively").

### C.   Defendants' Motion to Prohibit Default Judgments Is Moot

With no suggestion that FreightCar intended to seek default judgments, and before FreightCar had an opportunity to respond to Defendants' Motion to Stay and/or Prevent Plaintiff from Obtaining Defaults, the USW and Class Counsel ran into court with an "urgent" motion to prevent default judgments.  As FreightCar explained in response, it never had any intention to seek default judgments against these individuals while a motion to dismiss was pending.  Had the USW or Class Counsel contacted FreightCar's counsel before filing their "urgent" motion, FreightCar would have assuaged their unwarranted fears.

The Court has already addressed this motion (and defendants have recently withdrawn it), and hence the pending motion is now moot.  However, it is worth emphasizing that in their motion, Class Counsel admitted that it is currently obtaining retainers from all defendants to represent them here, thus alleviating any concerns that this case will present the "administrative nightmare" that the USW and Class Counsel contend.  (*See* Urgent Motion.)  All defendants will receive the same representation here as they would if this case proceeded in Johnstown.

## IV.   CONCLUSION

As explained above, FreightCar has properly asked this Court to address its rights and obligations.  Neither the USW nor Class Counsel has carried its burden in seeking dismissal or transfer.  The relief sought in the motion to stay default judgments has been granted and therefore is moot.  Accordingly, the Court should deny the pending motions.

Dated: August 21, 2013                    Respectfully submitted,

                                          */s/ Nancy G. Ross*                    

                                          Nancy G. Ross
                                          Kirk Watkins
                                          Sam Myler
                                          McDermott, Will & Emery LLP
                                          227 West Monroe Street
                                          Chicago, Illinois 60606-5096
                                          T: (312) 372-2000
                                          F: (312) 984-7700

                                          **ATTORNEYS FOR PLAINTIFF FREIGHTCAR
                                          AMERICA, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system this 21st day of August, 2013.  Any other counsel of record will be served by facsimile transmission and/or first class mail.


*/s/Kirk Watkins*
Kirk Watkins


DM_US 44211643-5.082260.0018